**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| ROBERT THOMAS,<br><br>  Plaintiff - Appellant,<br><br>v.<br><br>OREGON STATE POLICE; et al.,<br><br>  Defendants - Appellees. | No. 14-35229<br><br>D.C. No. 6:12-cv-01167-AA<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Submitted July 8, 2016[**]
Portland, Oregon

Before: PREGERSON, BEA, and OWENS, Circuit Judges.

Plaintiff-Appellant Robert Thomas ("Thomas") appeals from the district

court's order granting judgment as a matter of law in favor of Defendant-Appellees

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Scott Vaughn ("Vaughn") and the Oregon State Police ("OSP"). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

**1.** The district court did not err in granting Vaughn judgment as a matter of law on Thomas's Fourth Amendment claim that Vaughn detained Thomas for an unreasonable length of time while Vaughn conducted an investigation.

Although the duration of an investigative detention bears on its reasonableness, "there is no strict time requirement." *United States v. Mayo*, 394 F.3d 1271, 1276 (9th Cir. 2005) (citing *United States v. Sharpe*, 470 U.S. 675, 687 (1985)); *see also Sharpe*, 470 U.S. at 685 ("Much as a 'bright line' rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria."). "In assessing whether a detention is too long in duration to be justified as an investigative stop," the inquiry is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Sharpe*, 470 U.S. at 686.

Here, there was no evidence in the record that would allow a reasonable jury to find that Thomas's detention for 40–45 minutes was an unreasonable length of time under these circumstances. Thomas proffered no evidence to dispute that Vaughn detained Thomas "[t]o determine whether a crime had been committed,

2

such as assault" or "disorderly conduct" based on the appearance of Thomas and

Starplex Crowd Management Systems ("Starplex") personnel[1] when Vaughn first

encountered them.[2] Thomas does not dispute that as part of this investigation, OSP

troopers promptly interviewed the "three or four Starplex employees" involved with

removing Thomas from the Amphitheatre "to determine what happened inside the

Amphitheatre, and to determine if any of them were injured." Thomas proffered no

evidence to dispute that it can take 10–15 minutes to interview someone about an

altercation where there may be injuries. Thomas proffered no evidence to dispute

that it is part of the standard protocol of the OSP to run a criminal background check

on a suspect to make sure that he is not wanted for other crimes, and Vaughn

performed such check on Thomas in the command post. Thomas proffered no

evidence that Vaughn or other OSP officers did anything to delay unnecessarily their

investigation. To the contrary, one of the Starplex personnel that was interviewed by

the OSP testified that the troopers were moving with a reasonable amount of

expeditiousness in interviewing everyone. In short, there was simply no evidence

proffered at trial for which a reasonable jury could find that Vaughn did not

---

[1] Starplex is a private company contracted by the Oregon Parks & Recreation Department to provide security services inside the L.B. Day Amphitheatre.

[2] Both assault and disorderly conduct are offenses for which Thomas could have been arrested and jailed.

3

"diligently pursue[] a means of investigation that was likely to confirm or dispel [his] suspicions quickly" so as to render Thomas's 40–45 minute detention constitutionally unreasonable. *See Sharpe*, 470 U.S. at 686; *Mayo*, 394 F.3d at 1275–76.

In any case, the district court did not err in concluding at the close of evidence that Vaughn was entitled to qualified immunity. "In determining whether a government official's conduct violates clearly established law, the test is whether, 'at the time of the challenged conduct, the contours of a right are sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question *beyond debate*.'" *Sjurset v. Button*, 810 F.3d 609, 615 (9th Cir. 2015) (emphasis added) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)); *see also al-Kidd*, 563 U.S. at 743 ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." (internal quotation marks omitted)). Thomas points to no "clearly established" law that every reasonable trooper in Vaughn's position would know that it was unconstitutional to detain Thomas for 40–45 minutes while he diligently conducted an investigation into possible assault and disorderly

4

conduct violations.

**2.** The district court did not err in granting the OSP judgment as a matter of law on Thomas's negligence claims.

Regarding Plaintiff's claim that OSP failed to obey proper procedure, the only policy in the record is permissive, not mandatory. The policy related to traffic stops, and states that OSP officers "*may*" "advis[e] the citizen immediately of the reason for the stop/contact." Thus, OSP's failure to inform Plaintiff immediately of the reason for his detention did not violate any policy in the record. The district court properly entered judgment as a matter of law based on this evidence.

Thomas also claims that because he recalls seeing an OSP officer inside the Amphitheatre after Starplex employees picked him up off the ground after their altercation, OSP was negligent in failing to monitor and supervise the Starplex employees to prevent unnecessary harm to Thomas. Thomas proffered no evidence at trial, however, that OSP had any duty whatsoever to monitor and supervise Starplex personnel. To the contrary, the trial transcript is replete with testimony from both OSP officers and Starplex personnel that OSP had no duty to supervise Starplex personnel. Based on this evidence, no reasonable jury could have found for Thomas on his negligence claims against the OSP.

**AFFIRMED.**